# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

BRIAN MACK,

                                          Plaintiff,

                                                                           9:17-CV-1146

      v.                                                          (BKS/ATB)

SERGEANT RONALD G. WOOD II,
JOHN DOE CORRECTION OFFICERS # 1-3,

                                          Defendants.

BRIAN MACK, Plaintiff, pro se
CHRISTOPHER J. HUMMEL, Asst. Attorney General for Defendants

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Brenda K. Sannes, United States District Judge. Plaintiff commenced this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that employees of the New York State Department of Correctional and Community Services ("DOCCS") violated his constitutional rights during his confinement at Clinton Correctional Facility ("Clinton"). (Complaint ("Compl.") at 1-4, Dkt. No. 1).[1] Specifically, plaintiff alleges that on May 23, 2016, defendants Wood and John Doe Correctional Officers #1-3 participated in physically and sexually assaulting plaintiff, in violation of his First and Eighth Amendment Rights. (Amended Complaint ("Am. Compl.") at 10-12, Dkt. No.

---

[1] Plaintiff amended his complaint on September 6, 2018, following the withdrawal of plaintiff's counsel. (Dkt. Nos. 24, 25, 39). Substantively, plaintiff's claims in the amended complaint are identical to those in the original. (Dkt. Nos. 1, 39).

39). Presently before the court is defendant Wood's motion for 1) dismissal of the amended complaint as against the unidentified "John Doe" defendants, and 2) partial summary judgment on plaintiff's First Amendment retaliation claim. (Dkt. No. 65). Plaintiff has responded in opposition to the motion. (Dkt. Nos. 69, 70).  For the reasons set forth below, this court will recommend dismissing the amended complaint as against the unidentified "John Doe" defendants, and will further recommend denying summary judgment on plaintiff's First Amendment retaliation claim against defendant Wood.

## BACKGROUND

I. **Relevant Facts and Contentions**

   A. **Plaintiff's Contentions**

At all times relevant to this action, plaintiff was an inmate at Clinton under the care and custody of DOCCS. (Dkt. No. 39 at ¶ 6). According to plaintiff, the underlying assault occurred on May 23, 2016 at approximately 8:30 a.m., as plaintiff was leaving the mess hall after breakfast. (*Id*.). At that time, plaintiff was informed by an unidentified correctional officer that defendant Wood "needed to speak" with plaintiff. (*Id*. at ¶ 6-8). Plaintiff waited in place until defendant Wood arrived, at which time he took plaintiff into a nearby stairwell. (*Id*. at ¶ 9-11).

Upon entering the stairwell, defendant Wood proceeded to close the door and "violently shove[]" plaintiff into the wall, pin his face to the wall, and yell in his ear, "You need to min[d] your fucking business nigger; this is not Downstate Correctional Facility; we will kill your nigger ass here in Clinton; the Superintendent wants you dead; stop writing your fucking grievances about corruption activities!" (*Id*. at ¶ 12-13).

2

Plaintiff responded, "I will write complaints as warranted," to which defendant Wood replied, "Did I tell you to talk, shut the fuck up!" (*Id*. at ¶ 14-15).

Immediately following this exchange, plaintiff heard footsteps coming down the stairwell. (*Id*. at ¶ 16). As plaintiff turned toward the sound, defendant Wood pushed him, causing plaintiff's head to hit a fire extinguisher on the wall. (*Id*. at ¶ 18-19). Defendant Wood then pinned plaintiff to the ground. (*Id*.). At that time, three to four other unidentified correctional officers entered the stairwell. (*Id*. at ¶ 20-21). Plaintiff heard one of the unknown officers ask, excitedly, "is that the nigger Sarge, is that the nigger? Rat." (*Id*. at ¶ 22). They proceeded to kick plaintiff, while defendant Wood continued to pin him to the ground, with his knee in plaintiff's neck and back and his right hand on plaintiff's head. (*Id*. at ¶ 23-24). Plaintiff claims he was then sexually assaulted by the unknown officers, who, among other things, "shoved" an approximately ten-inch-long wooden stick into plaintiff's rectum. (*Id*. at ¶ 25-38). Defendant Wood held plaintiff down and watched the sexual assault take place. (*Id*.).

After, while plaintiff was still on the ground, defendant Wood warned plaintiff to "keep [his] complaints to [him]self," and that if he did not, he would be a "dead nigger." (*Id*. at ¶ 39-40). Defendant Wood then told plaintiff to go to his cell and take the wooden instrument out of his rectum. (*Id.* at ¶42). Plaintiff proceeded to his cell, but could not remove the object due to his pain. (*Id*. at ¶ 42-49). An officer came to plaintiff's cell following the incident to take the list for lunch, and upon seeing plaintiff, took him to the infirmary. (*Id*. at ¶ 45-54).

3

While plaintiff was waiting to be seen at the infirmary, defendant Wood came into the treatment room and gestured for plaintiff to remain silent, by placing his index fingers against his lips. (*Id*. at ¶ 63-65). Nevertheless, when the doctor asked plaintiff what happened, plaintiff disclosed that he was assaulted by defendant Wood and other unknown officers. (*Id*. at ¶ 66-67). Shortly thereafter, plaintiff was moved to an outside hospital to treat for his injuries. (*Id*. at ¶ 77-88). He returned to Clinton's infirmary later that day. (*Id*. at ¶ 89-90).

### B. Defendant Wood's Assertion of Facts

At all times relevant to this action, defendant Wood was employed as a sergeant at Clinton. (Declaration of Ronald Wood ("Wood Dec.") at ¶ 1-5, Dkt. No. 65-3). On May 23, 2016, he was at Clinton performing his duties as the west side supervisor, which included supervising the morning meal and conducting rounds. (*Id*. at ¶ 5).

There came a time that morning when defendant Wood was contacted by Correctional Officer ("CO") Nolan, who reported that plaintiff was bleeding from his anus and required medical attention. (*Id*. at ¶ 7). Defendant Wood instructed CO Nolan to escort plaintiff to the infirmary, and also reported to the infirmary himself to investigate the occurrence. (*Id*. at ¶ 8-9). It was not until this time that defendant Wood learned of plaintiff's allegations of injuries and assault. (*Id*. at ¶ 9). Defendant Wood subsequently investigated plaintiff's claims and determined that plaintiff had been securely placed in his cell after attending morning meal earlier that day, and plaintiff otherwise had no "callouts" that would have taken him out of his cell that morning.

(*Id*. at ¶ 10).

## DISCUSSION

### II.     Summary Judgement

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006).  "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial.  *Salahuddin*, 467 F.3d at 273.  In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all

inferences, against the movant. *See United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

In order to "defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant." *Diaz v. Pelo*, No. 915-CV-776 (DNH/DJS), 2019 WL 1411803, at *2 (N.D.N.Y. Feb. 15, 2019) (*Rep't Rec*.), *adopted*, 2019 WL 1411057 (N.D.N.Y. Mar. 28, 2019); Fed. R. Civ. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case.").

Credibility of sworn statements are better left to trier of fact and "should be treated as evidence in deciding a summary judgment motion" when those statements are "more than mere conclusory allegations" and "they are specific and detailed allegations of fact, [and] made under penalty of perjury." *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

### III. Unidentified/Unserved Defendants

#### A. Legal Standards

"It is a general principle of tort law that a tort victim who cannot identify the tortfeasor cannot bring suit." *Bishop v. City of New York,* No. 13-CV-9203, 2016 WL 4484245, at *3 (S.D.N.Y. Aug. 18, 2016) (quoting *Valentin v. Dinkins*, 121 F.3d 72, 75

(2d Cir. 1997)). In *Valentin*, the Second Circuit reversed a dismissal for failure to identify defendant police officers. However, the court specifically noted that "[t]his opinion is not intended to preclude a finding by the district court, after further inquiry, that the information available is insufficient to identify the defendant with enough specificity to permit service of process, so that dismissal of the complaint is warranted." *Id.* "Thus, following *Valentin*, if a plaintiff is unable to identify[2] defendants after being afforded the opportunity for limited discovery with assistance from the Court, his claims must be dismissed." *Id. See, e.g.*, *Epps v. City of Schenectady,* No. 1:10-CV-1101 (MAD/CFH), 2013 WL 717915, at *4 (N.D.N.Y. Feb. 27, 2013) ("All discovery is complete and thus, plaintiff's failure to identify the "John Doe" defendant mandates dismissal."); *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.*, No. 04-CV-2293, 2007 WL 74304, at *5 n.7 (E.D.N.Y. Jan. 8, 2007) ("Fictitious parties must eventually be dismissed, if discovery yields no identities." (brackets omitted) (citation omitted)); *Perrelli v. City of E. Haven*, No. 3:02 CV 0008 (GLG), 2004 WL 1202718, at *3 (D. Conn. May 28, 2004) ("[I]f after the completion of discovery, the plaintiff is not able to identify the actual names of the John Doe defendants, the claims against them must be dismissed").

---

[2] Although, generally, a plaintiff is also responsible for serving on each defendant the summons and complaint within 90 days of the filing of the complaint (See Fed. R. Civ. P. 4(m)), because plaintiff here has been granted permission to proceed IFP, he would be entitled to rely on the Court and the U.S. Marshals Service to effect service. *Walker v. Schult*, 717 F.3d. 119, 123 n.6 (2d Cir. 2013); see also 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process . . . in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) (the court must order the Marshals Service to serve if the plaintiff is authorized to proceed IFP)). Plaintiff's IFP status does not, however, absolve him of responsibility for identifying the John Doe defendants through discovery, in order to avoid dismissal. *See Epps,* 2013 WL 717915, at *4-5.

7

## B.    Application

Defendant Wood seeks dismissal of the amended complaint as against the unidentified and unserved defendants, John Doe #1-3. (Dkt. No. 65-5 at 3, n. 1). Specifically, defendant Wood maintains that the expiration of the joinder and discovery deadlines, coupled with plaintiff's extended opportunity to determine the defendants' identities, render dismissal appropriate. (*Id.*).

Plaintiff does not address this issue directly in his opposition papers. (Dkt. Nos. 69-70). However, plaintiff does claim that the "defendants are quite aware that the court has impeded [plaintiff's] motion for discovery for copies of all information surrounding the NYS Police and the NYS DOCCS OSI Reports."  Presumably, plaintiff's position is that his ability to identify the John Doe defendants has been frustrated by his inability to conduct the discovery he deems appropriate.

Nevertheless, the docket reflects that plaintiff has been given ample opportunity to identify the unknown defendants against whom he is alleging assault. On August 2, 2018, the court advised plaintiff that he must serve discovery requests upon defense counsel, where he may seek documents or information to help him identify the "John Doe" defendants. (Dkt. No. 35). On September 5, 2018, plaintiff was again instructed to serve discovery demands by mailing them to defense counsel, after plaintiff attempted to mail interrogatories directly to the court. (Dkt. Nos. 37, 38). On October 15, 2018, plaintiff moved for an extension of the discovery deadline, requested witnesses for trial, and requested an FBI investigation. (Dkt. No. 43). Plaintiff's request for an extension of

the discovery deadline was granted. (Dkt. No. 46) However, plaintiff's request for certain witnesses to be produced at trial was denied for being premature, and his request for an FBI investigation was denied for being outside of the authority of this court. (*Id.*). On November 9, 2018, plaintiff moved to compel discovery, which the court granted in part and ordered that any DOCCS reports regarding the subject incident, and any DOCCS logs or rosters that identify the officers, be disclosed to plaintiff, with appropriate security precautions and redactions. (Dkt. Nos. 48, 49).

On March 27, 2019, plaintiff's letter motion to produce witnesses and documents was received by the court. (Dkt. No. 62). Plaintiff's motion was denied, because it was unclear what relief he was seeking. (Dkt. No. 64). In the court's text order, plaintiff was instructed that to request witnesses be produced for depositions, he must notice the depositions pursuant to Fed. R. Civ. 30(b) and meet the formal requirements of that rule. (*Id.*). The court further advised plaintiff that to obtain additional discovery, he must send requests by mail to defense counsel, not the court. (*Id.*)

Plaintiff has also taken issue with the manner in which he was allowed to view documents provided by defense counsel, as he was not allowed to retain copies of these documents. However, the court addressed this issue, finding that the manner in which the documents were made available to plaintiff was appropriate, in light of reasonable concerns about security and the privacy of other witnesses. (Dkt. No. 73).

Based on the foregoing, it is clear that plaintiff has been extended every

9

reasonable opportunity to determine the identities of the John Doe defendants, yet has failed to do so. Accordingly,[3] this Court recommends dismissal of the amended complaint as against the John Doe defendants, without prejudice, in light of plaintiff's failure to identify and serve them upon the completion of discovery. *See Coward*, 665 F. Supp. 2d 281, 300-01 (S.D.N.Y. 2009) (holding plaintiff "simply cannot continue to maintain a suit against the John Doe defendant.") (internal citations and quotations omitted); *Burns v. Trombly*, 624 F. Supp. 2d 185, 197-98 (N.D.N.Y. 2008) (dismissing without prejudice *pro se* plaintiff's claims against John Doe defendants after two years of litigation and "adequate opportunity to conduct discovery," where plaintiff failed to name or serve said defendants).

## IV.    **First Amendment Claim – Retaliation**

### A.    **Legal Standards**

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for "adverse action"

---

[3] The court further notes a potential statute of limitations issue with respect to the unserved John Doe defendants. The underlying incident is alleged to have occurred on May 23, 2016. The statute of limitations for a section 1983 claim is three years. *Owens v. Okure*, 488 U.S. 235, 250-51 (1989); *See* N.Y. Civ. Prac. L & R. § 214(5). Without considering whether the statue would be tolled for any reason, the three year statute of limitations would have run on May 23, 2019. If the statute of limitations has run, the only way that plaintiff would be allowed to now name additional defendants is if the substitution "relates back" to the original complaint. *Moore v. City of Norwalk*, No. 3:17-CV-695, 2018 WL 4568409, at *2 (D. Conn. Sept. 24, 2018) (citing Fed. R. Civ. P. 15). However, there can be no relation back without a mistake about the party's identity. *Id.* The Second Circuit has made it clear that the failure to identify a defendant, when the plaintiff knows that the defendant must be named, may not be characterized as a mistake for relation back purposes. *Id.* (citing inter alia *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013)).

taken against him by defendant. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003). The Second Circuit has defined "adverse action" in the prison context as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (citations omitted). The plaintiff must establish a causal connection between the protected conduct or speech and the adverse action. *Gill*, 389 F.3d at 380. The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Bennett*, 343 F.3d at 137. Accordingly, plaintiff must set forth non-conclusory allegations to sustain a retaliation claim. *See Id.*

In order to establish a causal connection between the protected speech and the adverse action, a court may consider a number of factors, including "any statements made by the defendant concerning his motivation" and "the temporal proximity between the protected activity and the defendant's adverse action." *Williams v. Muller*, No. 98 Civ. 5204, 2001 WL 936297, at *3 (S.D.N.Y. Aug. 17, 2001); *see also Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009); *Turner v. Sidorowicz*, 2014 WL 641454, at *10; *Moore v. Cajigas*, No. 12 Civ. 4120, 2013 WL 4734829, at *6 (S.D.N.Y. Aug. 20, 2013).

### B. Discussion

Defendant Wood moves for partial summary judgment with respect to plaintiff's

First Amendment retaliation claim,[4] arguing among other things that plaintiff has not raised a question of material fact with respect to the causal connection element. (Dkt. No. 65-5 at 7-12). As discussed below, and viewing the evidence in a light most favorable to plaintiff, the court recommends denying defendant Wood's motion for partial summary judgment.

With respect to the first prong of a retaliation claim, filing a grievance is a constitutionally protected activity for an inmate. *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir.1996) ("[R]etaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under [Section] 1983."); *Hayes v. Dahkle*, No. 9:16-CV-1368 (TJM/CFH), 2017 WL 9511178, at *10 (N.D.N.Y. Oct. 30, 2017) (*Rep't Rec.*), *adopted as modified,* 2018 WL 555513 (N.D.N.Y. Jan. 19, 2018); *Burroughs v. Petrone*, 138 F. Supp. 3d 182, 206 (N.D.N.Y. 2015).

Records maintained by Clinton's Inmate Grievance Program Supervisor ("IGPS") reflect that plaintiff filed four grievances at Clinton prior to May 23, 2016. (Declaration of Christine Gregory ("Gregory Decl."), ¶ 14, Ex. A, Dkt. No. 65-4 at ¶ 14). On April 6, 2016, plaintiff filed a grievance requesting copies of his medical records from another DOCCS facility. (*Id*. at ¶ 15, Ex. B.). On April 11, 2016, plaintiff filed a grievance alleging that he was sexually assaulted at another DOCCS facility in December 2015, and that his requests for medical care had been ignored at Clinton. (*Id*.

---

[4] Defendant Wood has not moved for summary judgment with respect to plaintiff's Eighth Amendment claim of excessive force and failure to protect. (Dkt. No. 65-5 at 3, f. 2).

12

at ¶ 16, Ex. C.). On May 10, 2016, plaintiff filed a grievance stating that Clinton staff had fraudulently stolen thousands of dollars in "operational merchandise," including food and pharmaceuticals. (*Id.* at ¶ 17, Ex. D.). On May 17, 2016, plaintiff filed a grievance claiming that medical staff at Clinton had threatened him. (*Id.* at ¶ 18, Ex. E.).

Although plaintiff has not produced any documentary evidence, he alleges that in addition to the aforementioned grievances, he has also filed grievances against Clinton correctional officers for assaulting other inmates. (Dkt. No. 65-2 at 172-74). Plaintiff concedes that he never filed a grievance specifically naming defendant Wood prior to May 23, 2016. (*Id.*). Nevertheless, inasmuch as plaintiff claims that his May 10, 2016 grievance, relating to various, unidentified correctional officers stealing and "pilfering [] goods," was protected conduct, plaintiff has presented an issue of material fact with respect to the first prong of his retaliation claim. (*See* Dkt. No. 39 at ¶ 111).

With respect to the second prong, it is well settled that physical assault constitutes adverse action, as it is "conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003); *Hayes*, 2017 WL 9511178, at *10; *Woodward v. Lytle*, No. 9:16-CV-1174 (NAM/DEP), 2017 WL 9511175, at *7 (N.D.N.Y. Aug. 15, 2017) (*Rep't Rec.*), *adopted*, 2017 WL 4221074 (N.D.N.Y. Sept. 22, 2017). A reasonable jury could find that defendant Wood's alleged physical assault on plaintiff, as well as his failure to intervene during the sexual assault, would deter a

person of "ordinary firmness" from exercising their right to file a grievance within the DOCCS system. Accordingly, plaintiff has presented an issue of material fact with respect to the second prong of his retaliation claim.

With respect to the third prong, defendant Wood argues plaintiff lacks sufficient evidence to demonstrate a causal connection between plaintiff's protected activity and the adverse action. (Dkt. No. 65-5 at 9). Specifically, defendant Wood points to the lack of evidence that he was even aware of plaintiff's prior grievances, aside from plaintiff's own self-serving testimony. (*Id*. at 9-10). Defendant Wood notes that plaintiff did not attribute misconduct specifically to defendant Wood in his past grievances. (*Id*.; Wood Dec. at ¶ 14-15). Furthermore, defendant Wood maintains that his duties did not include investigating grievances, unless they concerned staff or areas under his direct supervision. (*Id*. at ¶ 14-16). Thus, Clinton administration would not have brought plaintiff's general allegations of stealing, misconduct, and assault to his attention. (*Id*.).

In order to satisfy the causal connection element of a retaliation claim, an inmate must demonstrate "that the protected conduct was a 'substantial or motivating factor' in the prison officials' decision to take action against the plaintiff." *Ciaprazi v. Goord*, No. 902-CV-915 (GLS), 2005 WL 3531464, *6 (N.D.N.Y. Dec.22, 2005) (citations omitted). Temporal proximity may be sufficient to support an inference of causal connection if the duration between the adverse action and the protected activity is "no more than six months." *Hayes*, 2017 WL 9511178, at *9 (citing *King v. McIntyre*, No. 9:11-CV-1457 (DNH/TWD), 2015 WL 1781256, at *5 (N.D.N.Y. Apr. 8, 2016)). Here,

14

the alleged assault occurred a few weeks after plaintiff filed his May 10, 2016 grievance. Nevertheless, a "showing of temporal proximity, without more, has generally been found insufficient to survive summary judgment" (*Ford v. Deacon*, No. 9:16-CV-01001 (MAD/TWD), 2018 WL 5729352, at *10 (N.D.N.Y. Aug. 27, 2018) (*Rep't Rec.*), *adopted*, 2018 WL 4501208 (N.D.N.Y. Sept. 20, 2018)), and as such this court cannot recommend denying defendant Wood's motion based on this factor alone.

Here, however, the defendant's alleged comments during and immediately after the alleged assault are further probative to our determination. As a general matter, it is difficult to establish one defendant's retaliation for complaints against other correctional officers. *See, e.g., Hare v. Hayden*, 09 Civ. 3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011) (plaintiff's retaliation claim was dismissed against a correctional officer when the only alleged basis for the retaliatory action was a complaint plaintiff filed involving a different officer) (citing *Wright v. Goord*, 554 F.3d 255, 274 (2d Cir. 2009)); *Guillory v. Ellis*, No. 9:11-CV-600 (MAD/ATB), 2014 WL 4365274, at *18 (N.D.N.Y. Aug. 29, 2014) ("it is difficult to establish one defendant's retaliation for complaints against another defendant"). Nevertheless, this general rule may not apply where there are indications of "a retaliatory purpose—i.e., that the [officer's conduct] was meant to penalize [the plaintiff] for bringing past grievances, and to dissuade future grievances." *Vincent v. Sitnewski*, 117 F. Supp. 3d 329, 338–39 (S.D.N.Y. 2015) (alterations and internal quotation marks omitted)). Thus, while a plaintiff who "alleges retaliatory adverse action by one officer for a grievance filed against another officer . . . faces a heightened burden of establishing a causal

15

connection," this is not per say barring. *Henderson v. Vanderwerff*, No. 9:13-CV-1537 (MAD/CFH), 2016 WL 660921, at *4 (N.D.N.Y. Feb. 18, 2016).

Plaintiff's allegations herein are sufficient to raise a question of material fact in order to survive summary judgment. Defendant Wood's alleged comments made during and immediately after the alleged assault, including "[y]ou need to mind your fucking business nigger . . . stop writing your fucking grievances about corruption activities;" and, "[l]et this be a lesson to you; keep your complaints to yourself, if you don't you'll be a dead nigger," reveal a specific and directed retaliatory motivation for his actions. (Am. Compl. at ¶ 13); *See Rivera v. Lawrence*, No. 9:05-CV-0967 (TJM/GHL), 2009 WL 1734735, at *5 (N.D.N.Y. June 18, 2009) (alleged statements by defendant including, "you should have not wrote [sic] to the Captain and that grievance and [sic] shit," and "that grievance you placed and the letter you sent . . . ain't shit," and "well, it seems like you knew and you don't know the rules," was sufficient for a reasonable fact finder to infer that the defendant "may have acted with a retaliatory motive."); *see Baskerville v. Blot*, 224 F. Supp. 2d 723, 733 (S.D.N.Y. 2002) (finding that a defendant's alleged comment during an assault, "you want to file lawsuits and grievances, you're nothing but a coward," and comments after, "I should have fucked you up the minute you entered the unit," pointed to a retaliatory animus); *Flynn v. Ward*, No. 15-CV-1028 (TJM/CFH), 2018 WL 3195095, at *10 (N.D.N.Y. June 7, 2018), (*Rep't Rec.*), a*dopted*, 2018 WL 3193201 (N.D.N.Y. June 28, 2018) (finding that a defendant's alleged statement, "don't you dare file any more grievances or I will slap

you silly," was sufficient to find a causal connection between plaintiff's grievances and the adverse action taken against plaintiff).

Defendant Wood's alleged reference during the assault to conspiracy among Clinton staff specifically reflects the substance of plaintiff's May 10, 2016 grievance. This court also notes that, although plaintiff's account may be self-serving, his recollection of defendant Wood's comments have been consistent across his pleadings, deposition testimony, and opposition papers. (Dkt Nos. 1; 39 at ¶ 13-15; 65-2 at 182; 69; 70); *See Booker v. Graham*, No. 9:13-CV-1342 (GTS/ATB), 2016 WL 11480150, at *10 (N.D.N.Y. Oct. 26, 2016) (*Rep't Rec.*), *adopted*, 2016 WL 7176607 (N.D.N.Y. Dec. 9, 2016) (summary judgment denied despite self-serving recollections by plaintiff).

Plaintiff alleges, and has sworn under oath, that defendant Wood made specific threats regarding his prior grievances during the alleged assault. (Dkt. No. 39 at ¶ 13-15). Defendant, on the other hand, has stated in a sworn declaration that he was not aware of the content of plaintiff's prior grievances. (Dkt. No. 65-3 at ¶ 11). The court, when faced with conflicting sworn statements, must leave such credibility determinations to a reasonable fact finder to determine. *Colon*, 58 F.3d at 873 (holding that disparity between the affidavits of a prisoner and correctional officer "itself creates a credibility issue that is not readily amenable to resolution on summary judgment"). Thus, any credibility determination as to whether defendant Wood made specific references to plaintiff's grievances during defendant Wood's assault and failure to

17

intervene is a question of fact for the jury. *Id.; McCarroll v. Matteau*, No. 9:09-CV-355 (NAM/TWD), 2012 WL 4380156, at *12 (N.D.N.Y. June 15, 2012) (comments attributed to defendant during misconduct raised a triable issue of fact regarding the casual connection between plaintiff's protected conduct and the alleged adverse action).

Accordingly, given defendant Wood's alleged comments, and considering the temporal proximity of the adverse action with plaintiff's grievances, plaintiff's allegations are sufficient to create a genuine issue of material fact as to whether defendant Wood was substantially motivated to retaliate against plaintiff for filing past grievances, and this court recommends that plaintiff's retaliation claim survive summary judgment. *See Henderson*, 2016 WL 660921, at *5 (alleged comments by a defendant not named in plaintiff complaint, "if [plaintiff] didn't like it, then [plaintiff] shouldn't have filed a complaint against [Officer Richardson]," in conjunction with the temporal proximity between the adverse action and the protected activity, was sufficient to survive a motion for summary judgment).

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendant Wood's motion to dismiss the amended complaint as against defendants John Doe Correction Officers # 1-3 be **GRANTED** and the action be **DISMISSED WITHOUT PREJUDICE** as against defendants John Doe Correction Officers # 1-3, and it is

**RECOMMENDED**, that defendant Wood's partial motion for summary judgment on plaintiff's First Amendment claim be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have Fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: July 26, 2019

_____
Hon. Andrew T. Baxter
U.S. Magistrate Judge